IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**HEATHER SCHRECKENDGUST**,

        Plaintiff,

v.                                                    No. CIV 07-164 BB/WDS

**BERNALILLO COUNTY SHERIFF
DARREN WHITE and BOARD OF
COUNTY COMMISSIONERS OF THE
COUNTY OF BERNALILLO**,

        Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter comes before the Court for consideration of Defendants' and Plaintiff's cross-motions for summary judgment (Docs. 27, 28). The Court has reviewed the submissions of the parties and the relevant law. Based on the evidence presented by the parties and the arguments they have raised, the Court concludes neither side is entitled to summary judgment. Therefore, the motions will be denied, although the issues remaining to be tried will be narrowed somewhat by this opinion.

       This case arises out of an incident during which Plaintiff, who is employed as a deputy by the Bernalillo County Sheriff's Department, was attacked by a dog ("Bart") that belonged to the Department's canine unit. Plaintiff was forced to shoot and kill Bart in self-defense. The details of that incident are not relevant to this lawsuit. What is relevant is that following the attack and shooting, Plaintiff had discussions with Sheriff White and with other employees of the Sheriff's Department about the incident. She also obtained pictures of the scene of the attack and passed

them on to her attorney, and ultimately filed a lawsuit.  The aim of that first lawsuit, at least in part, was to avoid the limits of the workers' compensation scheme by obtaining compensation for Plaintiff's injuries in the state-court tort system.  According to Plaintiff, Sheriff White retaliated against her for consulting with her attorney, for filing the tort-based lawsuit, and for her discussions with him and others about the dog-attack incident.  Plaintiff then filed this lawsuit, raising a civil-rights claim under the First Amendment and filing suit  pursuant to  42 U.S.C. § 1983.  Plaintiff has moved for summary judgment on liability only, and Defendants have moved for summary judgment on the basis of qualified immunity as well as the merits.

**Standard of Review**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing the parties'  motions, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (stating that moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.") Once the movant meets its burden, the nonmovant must identify evidence that would enable a

trier of fact to find in the nonmovant's favor. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

**Discussion**

In the past two years, following a seminal Supreme Court decision, the Tenth Circuit has established a new five-step analysis that must be applied to First Amendment retaliation claims such as this case. *See, e.g., Brammer-Hoelter v. Twin Peaks Charter Academy,* 492 F.3d 1192, 1202 (10th Cir. 2007) (discussing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). The five-step inquiry asks: (1) whether the employee was speaking pursuant to her official duties, or as a private citizen (if the former is true, the inquiry is at an end and there can be no claim of unconstitutional retaliation); (2) whether the subject of the employee's speech was a matter of public concern, or merely a private grievance (if the latter is true, the inquiry is also at an end and there can be no retaliation claim); (3) whether the employee's interest in commenting on the matter of public concern outweighs the interest of the state as employer; (4) if so, whether the employee's speech was a substantial motivating factor in a "detrimental employment decision;"[1] and (5) if the employee has made such a showing, whether the employer can establish it would have made the same decision even in the absence of the protected speech. *Brammer-Hoelter*, 492 F.3d at 1202-03. The first three of these steps are questions of law to be decided by the trial court, while the last two are ordinarily questions of fact. *Id.*

---

[1]This factor actually contains two equally-important subparts. The first is that the employer do something to the employee that is serious enough to constitute an actionable adverse employment action. *See, e.g., Moya v. Schollenbarger*, 465 F.3d 444, 456 (10th Cir. 2006) (an implicit requirement of the test is that the public employer has taken some adverse employment action against the employee). The second is the causal relationship requirement, that the employee's speech substantially motivated the employer to take the adverse employment action.

**Plaintiff's "Speech":** Before the five-step analysis can be applied in this case, it is necessary to determine what acts of speech are involved. Based on the materials submitted to the Court, it appears there are three different types of actions that Plaintiff characterizes as speech protected under the First Amendment. The first is her discussion of the dog-attack incident with Sheriff White as well as other personnel in the Sheriff's Department; the second is her consultation with her attorney and, in the process, supplying her attorney with photographs of the dog-attack site; and the third is her act of filing and continuing to litigate her state-court tort lawsuit as well as this § 1983 lawsuit. It is necessary to apply the five-part test set out above to each of these acts of "speech" to determine whether a viable retaliation claim exists with respect to any or all of them.

### A. Discussions With Sheriff White and Others

This allegedly protected conduct is the one dealt with most easily. In her deposition, Plaintiff indicated that when she spoke to Sheriff White, she talked to him about her injury and the medical treatment she was receiving. [Pltf. MSJ, Exh. 1, p. 13] She also expressed disappointment in the way the dog-attack incident had been investigated, as well as the lack of any disciplinary action against the handler or handlers responsible for keeping Bart under control. [*Id.* pp. 13-14, 16] She did not, however, communicate to Sheriff White any larger concerns about the way the canine units were being operated, such as allowing the dogs to be used off-leash and without muzzles. [*Id.* pp. 21-22][2]   Therefore, the only evidence submitted concerning

---

[2] Plaintiff did indicate that her "big concern" was that although Bart bit her, it could have been anybody on the force, and she wondered whether the matter was receiving less attention than it would have if a civilian had been bitten. [MSJ Exh. 1, p. 16] However, there is nothing in the summary-judgment record to show that Plaintiff said anything to Sheriff White about this concern for co-workers and civilians. In applying the five-step test, the Court must consider only

Plaintiff's conversation with Sheriff White indicates her speech during that meeting did not involve a matter of public concern. Instead, Plaintiff was expressing dissatisfaction over the way a private grievance – the dog attack she had suffered – was being handled by the Sheriff's Department. For this reason, the statements she made to Sheriff White did not constitute protected conduct under the First Amendment, and cannot be the basis of a retaliation claim. *See, e.g., Brammer-Hoelter, supra*, 492 F.3d at 1205-06 (speech dealing with personal disputes or grievances, criticisms of internal departmental affairs, and attacks on supervisors' performance are not matters of public concern).

      To the extent Plaintiff complained to other Sheriff's Department personnel about the way the dog-attack incident was investigated, the result is the same -- no issue of public concern is implicated by such speech. There is some indication in the summary-judgment record, however, that Plaintiff's discussions with these other personnel were broader than her conversation with Sheriff White. Plaintiff indicated she talked to various individuals about their own experiences with dog attacks, use of the department's canines in general, and use of the canines off-leash. [Pltf. MSJ Exh. 1, pp. 23-26] Even if these conversations constituted protected conduct, however, they cannot be the basis of this First Amendment retaliation claim against Sheriff White. This is true for one main reason -- there is no indication that Sheriff White knew about the conversations. *See Maestas v. Segura*, *supra*, 416 F.3d at 1189 (alleged retaliator must have known about the protected conduct for retaliation to have occurred). For these reasons,

---

speech that is actually made, not unspoken concerns that are not communicated to an employee's superior. *Cf. Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) (discussing fact that protected conduct cannot be a basis for retaliation where defendants did not know of such conduct).

Plaintiff's conversations with Sheriff White and other Department personnel cannot support her First Amendment retaliation claim.

### B. Consultations With Attorney and Resultant Lawsuits

These aspects of Plaintiff's arguably protected conduct will be analyzed together, as it is difficult, as well as illogical, to separate an employee's consultations with her attorney from any legal action that might result from such consultation. In addition, for purposes of this motion the Court will accept the parties' characterization of Plaintiff's actions as "speech," although in analogous circumstances courts have indicated that the employee's actions might implicate other First Amendment rights such as the right of association and the right to petition the government or access the courts. *See, e.g., Denius v. Dunlap*, 209 F.3d 944, (7th Cir. 2000) (stating that the right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition); *Lytle v. Wondrash*, 182 F.3d 1083, 1087 (9th Cir. 1999) (addressing case involving alleged harassment due to prior litigation engaged in by public employee; question is whether such harassment violates a constitutional right of access to the courts). However Plaintiff's actions are characterized, it is clear that at least under some circumstances a public employee does have a constitutional right to consult an attorney and to file a lawsuit. The Court will therefore apply the five-step test, as argued by the parties in their briefs, to Plaintiff's actions.

Defendants have raised four main arguments in support of their motion for summary judgment and in opposition to Plaintiff's motion. First, they contend Plaintiff spoke as a public employee, not a private citizen, when she consulted her attorney and then filed and litigated her lawsuits. Second, they maintain her speech did not involve matters of public concern, but merely

personal grievances, and therefore was not conduct protected by the First Amendment. Third, they deny that Plaintiff's actions played any causal role in anything Sheriff White did involving Plaintiff. Finally, they argue that Plaintiff has to date suffered no adverse employment action, and therefore cannot state a claim for retaliation.

      **1. Public Employee/Private Citizen:** It is clear Plaintiff was not acting as a public employee when she consulted with an attorney and then filed suit. The test for determining when an employee speaks not as a citizen, but as a public employee, is whether the employee's speech occurs "pursuant to [her] official duties." *Garcetti v. Ceballos*, *supra,* 547 U.S. at 421. Although the exact contours of the test have not been established, the Tenth Circuit has set out various guidelines. For example, an employee's speech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do. *Green v. Bd. of County Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007). Also, if an employee "engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer-Hoelter*, *supra*, 492 F.3d at 1203. As another example, an employee who speaks privately with her superiors concerning matters that are within her employment "portfolio" is speaking pursuant to her official duties. *Casey v. West Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1329 (10th Cir. 2007).

    None of the above guidelines applies to Plaintiff's conduct in this case. Her job duties hardly included consulting with an attorney and engaging in litigation against her employer. Therefore, she was not engaging in speech while performing an official duty, and the speech did not reasonably contribute to her performance of that duty. Furthermore, she was not a member

of the canine unit and had no duties or responsibilities with respect to that unit, so speech or litigation concerning the operations of that unit was not part of her job portfolio. Finally, Plaintiff's consultation with her attorney and maintenance of litigation against her employer was certainly not generally consistent with the type of activities she was paid to perform. The Court therefore holds that Plaintiff was not speaking as a public employee, but as a private citizen, when she consulted with her attorney and engaged in litigation against her employer.[3]

    **2. Public Concern/Personal Grievance:** Defendants argue that when Plaintiff took the dog-attack pictures to her attorney and consulted with him, and then engaged in litigation against the Department, she was merely attempting to obtain redress for the personal injuries she suffered when she was bitten by Bart. Therefore, contend Defendants, Plaintiff was not speaking out about matters of public concern, but was communicating about a purely personal grievance, and her actions were not protected conduct under the Constitution. In support of this contention, Defendants point to statements Plaintiff allegedly made to an investigator from the Department's Internal Affairs Unit ("IA"). According to Defendants, these statements were made on or about

---

[3] Defendants emphasize the fact that Plaintiff obtained information, specifically the copies of photographs of the dog-attack scene, pursuant to her position as a deputy. In other words, she was able to obtain the photographs, as well as other information about prior canine-unit attacks on officers, without a subpoena or other court order because she was a deputy and as a result had the ability to request items of evidence from the Department. The ability to obtain "inside" information, however, is not the test of whether an employee is speaking pursuant to her duties when she engages in particular conduct. As discussed above, the test is whether she is performing her official duties at the time she is speaking, not whether her official position allowed her to obtain the information about which she is speaking. Similarly, Defendants' reliance on the fact that Plaintiff was a backup public information officer ("PIO") for the Department, as well as an occasional trainer, is misplaced. A PIO's duties consist of making statements to the media on behalf of the Department, and a trainer teaches other law enforcement officers specialized skills or information. Maintaining litigation against the Department has no connection at all to these duties.

February 21, 2006, and indicate that when Plaintiff took the pictures to her attorney, her purpose was "just to see if I had a case other then (sic) what I would've had through workman's (sic) comp." [Def. MSJ, Exh. B, depo. Exh. 3][4] Plaintiff also allegedly stated that she wanted her attorney to review the photographs and other materials to see if she "had a case." [*Id.*] In sum, Defendants argue that Plaintiff's sole purpose in consulting with her attorney was to find out whether she would be limited to the workers' compensation system in attempting to obtain compensation for her injuries, or whether she might be able to bring a successful tort claim in state court.

      The chief problem with Defendants' argument is that it ignores all the evidence favorable to Plaintiff, indicating she had dual motives in consulting with her attorney and engaging in litigation. Part of her motivation, to be sure, was to obtain compensation for her injuries. However, there is also evidence that she wanted to raise more general issues concerning the manner in which canines are used by the Department and how the canine unit affects the safety of other officers and the general public. Plaintiff testified at her deposition that at first, when she obtained copies of the photographs, she did not have in mind a review of the department's use of canines; however, after she learned more about Bart's history and other "canine cases" she had more of a concern for everybody's safety than for anything else. [Pltf. MSJ Exh. 1, p. 161] She added that before she contacted her attorney, she discussed with her husband the fact that there

---

[4]This exhibit is not identified or authenticated at all; it appears to be a transcript of an interview between the IA investigator and Plaintiff, although for some reason Plaintiff is identified as "DS." There is no indication whether "DS" was sworn, and no identification of the IA investigator. From the content of the transcript, however, it is possible to identify Plaintiff as the speaker. While this exhibit would certainly not be admissible at trial in its current format, the Court has not attempted to determine whether it should be considered for summary-judgment purposes because it does not affect the result of the Court's analysis.

was a broader issue of officer safety that she needed to bring to someone's attention, and that this safety concern came into her head in November 2005. [*Id.* pp. 167, 176] Plaintiff has also filed an affidavit reiterating and expanding on her deposition testimony. [Resp. to Def. MSJ, Exh. 2] In this affidavit Plaintiff explains that she consulted her attorney about her concerns for officer safety and citizen safety, as well as the issue of which public forum would be best for raising those issues. [*Id.*] All of this evidence raises a genuine issue of fact as to Plaintiff's motivation in contacting her attorney in the first place, and then filing and litigating her lawsuits.[5]

It is apparent, therefore, that Plaintiff's motives for engaging in her protected conduct are in dispute. Normally, establishing a factual issue as to her motives would not be sufficient to avoid summary judgment on a retaliation claim. This is because, while an employee's motivation in speaking out is a relevant consideration, it is also crucial to examine the content of the employee's speech to decide whether it raises a matter of public concern. *See Arndt v. Koby*, 309 F.3d 1247, 1254 (10th Cir. 2002) (employee's subjective motivation for speaking, standing alone, is not determinative of public-concern question; instead, court looks at motive as a way to help assess the content of the speech, to determine whether it is purely personal). In this case, however, neither party has addressed the content of Plaintiff's speech at all. The only evidence presented has been directed at her reasons for consulting with her attorney. No evidence, on the other hand, has been provided as to the allegations Plaintiff has made in the state-court lawsuit

---

[5]Defendants dismiss Plaintiff's assertions about her public-safety concerns, arguing she began mentioning them only when she realized it was necessary to do so to successfully assert a First Amendment claim. While this contention may be a suitable subject for cross-examination, it is not an inference the Court is permitted to draw during the summary-judgment process. Instead, the Court must draw all inferences in favor of Plaintiff, the party opposing Defendants' motion.

that allegedly prompted Sheriff White's retaliatory actions.[6]  Since the content of Plaintiff's "speech" has not been discussed in the parties' arguments, the Court will likewise not address the issue.  Instead, the Court decides only that summary judgment is not warranted for either side on the only argument briefed by the parties -- the issue of Plaintiff's motivation in consulting with an attorney and engaging in litigation.

   **3. Causal Connection:**  Defendants argue there is no evidence of the required causal connection between Plaintiff's allegedly protected conduct and the claimed adverse employment actions inflicted upon Plaintiff by Sheriff White.  It is first necessary, therefore, to determine what alleged actions of Sheriff White constitute the adverse employment actions claimed by Plaintiff in this case.  The most significant of these is the IA investigation that was requested by Sheriff White in December 2005, two months after Plaintiff was attacked by, and forced to shoot, Bart.  No decision has yet been issued as a result of that investigation.  Other examples of adverse actions discussed in Plaintiff's briefs include the fact that Sheriff White allegedly honored Bart posthumously and thereby belittled Plaintiff's injuries, as well as Sheriff White's changed treatment of Plaintiff after she sent in her tort claims notice and then filed suit.[7]

---

[6]In Plaintiff's brief in response to Defendants' motion for summary judgment, she does mention the fact that photographs of many other dog-bite incidents will be introduced at the trial of the state-court lawsuit, indicating the larger question of canine-unit safety may be an issue in that case.  Argument of counsel, however, is not evidence, and the Court has been presented with no evidence – such as pleadings, pre-trial orders, or the like – revealing the content of Plaintiff's assertions in her state-court case.

[7]In Plaintiff's deposition and Defendants' briefs, there has been some mention of other incidents, such as chilly treatment of Plaintiff by members of the canine unit, snide comments by the same individuals, refusal to reinstate her as a Field Training Officer ("FTO") following her resignation from the program, and the denial of a promotion to the crimes-against-children unit..  However, Plaintiff did not discuss these other possible adverse employment actions in her briefs.  Furthermore, she did not present evidence that would allow an inference they were examples of

A brief explanation of the circumstances surrounding the IA investigation follows.[8] At some point following the Bart incident, Plaintiff followed the correct procedures and requested copies of the photographs that had been taken at the scene of that incident. She took the pictures to attorney Sam Bregman and spoke with him, as discussed above. Unbeknownst to Plaintiff, Mr. Bregman then lent or gave some of the pictures to attorney Brad Hall. On December 14, 2005, Sheriff White was attending a mediation session in a different dog-bite case involving Bart. [Def. MSJ, Exh. B, Attach. 1] During that mediation session the opposing counsel, Mr. Hall, produced the pictures of the scene of the attack on Plaintiff. [*Id.*] Sheriff White was not pleased to discover that department photographs had been obtained by opposing counsel, and demanded an investigation. [*Id.*] This request was communicated to the IA department the very next day, December 15, 2005, by way of a memorandum from the Undersheriff. [*Id.*] At that point the Undersheriff and the Sheriff (who was sent a copy of the memorandum) already knew there had been no discovery requests for the photographs, and only two "service requests" for them: one from Kevin Sheldahl, a member of the canine unit, and one from Plaintiff. [*Id.*] The

---

retaliation by Sheriff White. For example, there is no evidence Sheriff White knew about the actions of the canine unit. Also, Defendants presented an affidavit stating that Sheriff White had nothing to do with the FTO decision, and Plaintiff has offered no evidence that might contradict that assertion. [Def. MSJ, Exh. D] Finally, Plaintiff herself opined that another officer received the promotion because she apparently received a higher score in the promotion process than did Plaintiff, and Plaintiff has offered no evidence indicating either that Sheriff White had a part in the promotion decision or that retaliation played a role in that decision. Since Plaintiff has apparently elected not to pursue an argument that these incidents were examples of retaliation, and the evidence is undisputed to the contrary, the Court will not address them.

[8]This summary is not intended to find facts for purposes of trial, and may be contradicted by the evidence presented at trial. It is merely a summary of the facts viewed in the light most favorable to Plaintiff. Of course, where the evidence is unfavorable to her but no contrary evidence has been submitted, the evidence cannot be viewed in her favor.

assigned IA officer, Detective Sevier, was given the case in early January, 2006. [Def. MSJ, Exh. B, pp. 9, 15] Around the same time, on January 12, 2006, Plaintiff submitted a Tort Claims Notice to the Bernalillo County Clerk's Office. [Pltf. MSJ, Exh. 4] A little more than a month later, Plaintiff was ordered to appear for an IA inquiry on February 21, and did so. [*Id.* Exh. 5] Following that interview, at some undetermined date, Detective Sevier completed his investigation. Sheriff White, however, has not yet made a final decision concerning the IA investigation and any discipline that might result from it. At his deposition, Sheriff White testified explicitly that he will not issue a final decision until the litigation Plaintiff has initiated is completed.

With respect to Plaintiff's assertion that Sheriff White "honored" Bart and placed his death above her injuries, the Court assumes Plaintiff is referring to a plaque honoring Bart that was given to Sheriff White. [Def. Resp. to MSJ, Exh. D, pp. 140-41] The plaque was given to Sheriff White by a private organization, Friends of New Mexico K-9. [*Id.*] It states that Bart was killed in his prime, while doing what he was trained to do. [Pltf. MSJ, Exh. 7] Sheriff White apparently passed on the plaque to the canine unit, because it ended up on the desk of that unit's head in the East Mountain office of the Department. [*Id.,* Exh. 1, p. 220] Plaintiff became aware of the plaque when an unidentified individual sent her a photocopy of it. [*Id.*] It is difficult for the Court to characterize Sheriff White's action, passing on a plaque that was given him by a private organization, as "honoring" Bart. Even if that were true, however, there is no evidence of a causal connection between that act and Plaintiff's protected conduct. There is no indication when Sheriff White received the plaque, or whether he knew about Plaintiff's lawsuit

13

or consultation with her attorney when he did so. Therefore, no inference of a retaliatory motive can be drawn from his actions with respect to the plaque.

There is evidence, on the other hand, establishing the requisite causal connection between Plaintiff's protected conduct and the remaining two alleged adverse actions of Sheriff White. First, Plaintiff testified that after the dog bite, Sheriff White's attitude toward her became much more distant and there is still tension between them. Before that incident, she and Sheriff White had been friendly and had spent time together "hanging out." This is evidence of a causal connection between the dog bite and its aftermath, and the tension Plaintiff currently experiences in her interactions with Sheriff White. As to the IA investigation and pending decision, there is evidence from Sheriff White himself that his refusal to issue a decision in that case is directly related to the lawsuits that are pending against him and the Department. He testified in his deposition that his investigation would not be concluded and a decision issued until either the dog-bite tort case or the First Amendment lawsuit, or perhaps both, were concluded. [Pltf. MSJ, Exh. 2, p. 28] This establishes the causal connection required by the five-part *Garcetti* test.

Defendants argue that even though Sheriff White's act of keeping the IA investigation open is a direct result of the pendency of Plaintiff's lawsuits, the causal connection is still lacking. They maintain Sheriff White has an acceptable non-retaliatory motive for refusing to end the investigation and issue a decision, as he testified in his deposition. He stated that he did not want to finish the IA investigation because evidence might emerge from one or both of Plaintiff's lawsuits, which would be relevant to the IA proceeding. [Pltf. MJS, Exh. 2, p. 28] If a jury believed this was his motive, then the "substantial motivating factor" prong could indeed be decided in Sheriff White's favor. However, a reasonable jury could also consider countervailing

evidence, including the fact that Detective Sevier's investigation was completed over two years ago, meaning the basic facts underlying Plaintiff's actions have been known for a very long time. Such a jury could also conclude that Sheriff White's true motivation for keeping the IA proceeding pending is to exert pressure on Plaintiff, or intimidate her in her trial testimony. For this reason, Defendants' argument cannot be the basis of a grant of summary judgment. It is, however, sufficient to warrant denial of Plaintiff's own motion for summary judgment.[9]

**4. Adverse Employment Action:** Defendants contend that none of the actions allegedly taken by Sheriff White constitute retaliatory adverse employment actions, and therefore it does not matter whether the causal connections discussed above exist. The standard in First Amendment cases for determining whether a particular action constitutes an actionable adverse employment action is stated in various ways in various cases. Essentially, the test boils down to an inquiry into whether, as a result of the employer's actions, a reasonable person would be deterred from exercising her First Amendment rights. *See, e.g., Dillon v. Morano,* 497 F.3d 247, 254 (2d Cir. 2007) (proper legal test in determining whether an employment action is adverse in First Amendment retaliation cases is whether the alleged acts "would deter a similarly situated

---

[9]The Court notes Defendants' argument that Sheriff White's initiation of the IA proceedings in December, 2005 could not have been retaliatory because Plaintiff did not submit her Tort Claims Notice until January 2006, and there is no evidence that Sheriff White knew Plaintiff had consulted an attorney when he initiated the investigation. As discussed above, however, there is evidence Sheriff White knew almost immediately that Plaintiff and the then-head of the canine unit were the only two people who had obtained official access to the photographs. He also knew the photographs depicted the scene of the attack on Plaintiff, and there is evidence he knew Plaintiff was dissatisfied with the investigation the Department had performed regarding that attack. Finally, the photographs were produced by an attorney, from which Sheriff White could infer that Plaintiff may have consulted with that attorney. Since the initiation of the investigation is closely tied in with the continuation of that investigation and the refusal to conclude it, the Court will find there are fact issues remaining to be determined concerning that matter.

individual of ordinary firmness from exercising his or her constitutional rights."). Applying this test to the two remaining potential adverse employment actions, the Court concludes that one of those actions could be sufficient to allow a finding of liability, while the other is not.

The tension that Plaintiff now feels between Sheriff White and herself, as well as the loss of camaraderie, cannot be considered actionable as a retaliatory act. Some level of tension is bound to be expected when, as is the case here, an employee files suit against her employer. *See Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984) (general increase of tension in the workplace would be expected to follow revelation that a claim of discrimination in employment had been filed, and is not an adverse employment action). A reasonable person should have known that before the lawsuit was filed, and this knowledge obviously did not deter Plaintiff from proceeding with her state-court tort action or, subsequently, this lawsuit. The Court therefore finds that Sheriff White's changed demeanor toward Plaintiff would not deter a similarly situated employee from engaging in the same protected conduct as did Plaintiff. *See Dillon, supra*.[10]

Sheriff White's refusal to issue a decision in the IA proceeding is a different matter. The Court finds that having a disciplinary action hanging over one's head could indeed chill a person in the exercise of her First Amendment rights. Knowing that the testimony provided at a trial, or even the results of that trial, could impact on whether discipline is imposed as well as the severity of such discipline, is equivalent in impact to the actual imposition of discipline. In some ways, in fact, it is more of a deterrent to the exercise of First Amendment rights than actually being

---

[10]It should be noted, however, that tension and chilly demeanor can be considered evidence that Sheriff White was displeased with Plaintiff's actions; this evidence therefore might be relevant to Plaintiff's retaliation claim. *See Geisler, supra*.

16

subjected to discipline and being done with the matter. For that reason, a jury must decide whether Sheriff White's refusal to issue a decision in the IA proceeding is substantially motivated by a desire to retaliate against Plaintiff.

**C. Liability of County:** Defendants argue that the County is entitled to summary judgment because Plaintiff has presented no evidence of a County policy or custom that could support the imposition of municipal liability. However, Plaintiff's cause of action against the County is not based on a custom or policy; instead, it is based on the fact that Sheriff White is a final policymaker in the area of disciplining Department employees. This is an alternate means of imposing municipal liability on a government entity. *See Milligan-Hitt v. Bd. of Trustees of Sheridan County Sch. Dist. No. 2*, 523 F.3d 1219, 1223-24 (10th Cir. 2008) (where no official policy exists, municipal liability may still be imposed if the plaintiff's rights were violated by a final policymaker). Sheriff White testified that he is the decision-maker with respect to Plaintiff's IA proceeding, which makes him a final policymaker in that area. Therefore, his actions constitute the actions of the County, and if he is found liable the County will also be liable. *See id.* For that reason, summary judgment will not be granted on the municipal-liability claim.

**Conclusion**

As a result of the foregoing, the motions for summary judgment filed by both parties will be denied. The issues remaining for trial are narrowed somewhat by this opinion, as discussed above. In addition, the Court notes that the briefing in this case contains reference to issues that have been supported with little or no admissible evidence. These issues include political philosophies as well as Sheriff White's alleged propensity to punish employees who cross the

17

"blue line." The Court will not allow the trial of this case to devolve into an inquiry concerning the validity of other disciplinary sanctions meted out by Sheriff White, or into his political leanings. Plaintiff will be required to produce convincing direct evidence of a pattern and practice of retaliatory behavior in substantially similar cases before the Court will even consider admitting such evidence at trial.

## ORDER

A memorandum opinion having been entered this date, it is hereby ORDERED that the motions for summary judgment (Docs. 27, 28) filed by the parties be, and hereby are, DENIED.

Dated this 29th day of September, 2008.

_____
BRUCE D. BLACK
United States District Judge